VANDEVORT v. THOMPSON–STARRETT CO.

(Circuit Court, W. D. Pennsylvania. November 2, 1910.)

No. 76.

1. CONTRACTS (§ 229*)—SERVICES—RATE OF COMPENSATION.

Plaintiff by written contract agreed to expedite the deliveries of structural steel for defendant during a specified period. Plaintiff's services were described generally as securing delivery at the time and in the manner required by defendant, of the structural steel and cast iron necessary in defendant's business, supervising the manufacture thereof through the mills, etc. The defendant agreed to pay the plaintiff 40 cents a ton and to give plaintiff its entire tonnage, except the cast iron columns and bases .obtained outside a territory inclosed by a radius of 50 miles from Pittsburg, and further agreed that not over one-third of its entire tonnage would be placed outside the Pittsburg territory, and that, if more than one-third was so placed, it would pay the plaintiff, on such excess, 55 cents a ton. *Held*, that plaintiff was entitled to recover upon the entire tonnage used by the defendant in its business of erecting the structural steel in a described building, and that his right of recovery was not limited to such tonnage as the defendant supplied and erected.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1045; Dec. Dig. § 229.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. EVIDENCE (§ 455*)—WRITTEN CONTRACT—PAROL EVIDENCE—MEANING OF WORDS.

Where words used in a written contract are ambiguous or technical, or in use in the arts, parol evidence may be admitted to explain the sense in which they were intended.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2104; Dec. Dig. § 455.*]

At Law. Action by N. A. Vandevort against Thompson-Starrett Company. On defendant's motion for judgment non obstante veredicto. Denied.

Lyon & Hunter, for plaintiff.

Wm. A. Steinmeyer and Patterson, Sterrett & Acheson, for defendant.

YOUNG, District Judge. This is a motion for judgment for defendant non obstante veredicto. At the trial the court directed judgment to be entered for plaintiff for the full amount of his claim and interest. The defendant requested the court, by a point submitted, to instruct the jury to find for the defendant, which was refused. Under the facts admitted by the pleadings, or uncontradicted in the case, there was nothing to be left to the jury, because the whole case turned upon the interpretation of the contract sued upon. It is conceded that, if the court was right in its interpretation of the contract, the verdict must be for the plaintiff. Equally, if the court was wrong in its interpretation of the contract, there was nothing for the jury, and the verdict must be for the defendant. This whole case may therefore be disposed of upon this rule for judgment non obstante veredicto.

In order that the case may be clearly understood, it is necessary to state certain facts which appear by the pleadings and evidence. The suit was brought by N. A. Vandevort, the plaintiff, against the Thompson-Starrett Company, the defendant, upon the following contract:

"Memorandum of agreement, made this fourth day of March, 1908, by and between N. A. Vandevort, of Pittsburg, Pennsylvania, and Thompson-Starrett Company, of New York, New York:

"I. N. A. Vandevort hereby agrees to expedite the deliveries of·structural steel for Thompson-Starrett Company, including cast-iron columns and bases, with the exemption expressed in paragraph III of this agreement, for a period of two years, commencing April 1, 1908, with the privilege to either party to terminate this agreement within one year by giving written notice to the other party on or before December 31, 1908; it being further agreed by N. A. Vandevort that if, for just cause, his services under this agreement are unsatisfactory and unacceptable to Thompson-Starrett Company, this agreement is terminable upon the part of Thompson-Starrett Company upon the giving of thirty days' written notice to N. A. Vandevort of Thompson-Starrett Company's intention to terminate this agreement upon the date stated in said written notice.

"II. It is mutually understood and agreed by and between N. A. Vandevort and Thompson-Starrett Company that the services of N. A. Vandevort covered by this agreement are as follows: Generally, the securing of the delivery of the structural steel and cast iron necessary in Thompson-Starrett Company's business, at the times and in the manner required by Thompson-Starrett Company; supervising the entering of the rolling lists and follow-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ing them through the fabricating company's offices and the rolling mills, until the plain material has been delivered at the shops of the fabricating company; to supervise the making of shop drawings, the fabrication and shipment of finished material, and, where necessary, to trace cars and expedite movement of such cars to destination; to keep in communication with Thompson-Starrett Company through its chief engineer, reporting once weekly, or whenever requested, the condition of the work at the mills and in the shops as to plain and finished material.

"III. For and in consideration of the services above described, Thompson-Starrett Company agrees to pay N. A. Vandevort, at the rate of forty cents (40¢) per ton of 2,000 pounds, and to give to N. A. Vandevort all its tonnage, including cast-iron columns and bases, with the exception of such cast-iron columns and bases, obtained outside a territory inclosed by a radius of fifty (50) miles from Pittsburg, Pennsylvania.

"IV. Thompson-Starrett Company hereby agrees that not over one-third of its total tonnage, covered by this agreement, will be placed outside of the Pittsburg territory above described.

"V. If more than one-third of Thompson-Starrett Company's entire tonnage, exclusive of the cast-iron columns and bases exempted under paragraph III of this agreement, is placed outside of the said Pittsburg territory, Thompson-Starrett Company agrees to pay N. A. Vandevort at the rate of fifty-five cents (55¢) per ton of 2,000 pounds on such excess tonnage over the one-third of the total tonnage placed outside the said Pittsburg territory; the adjustment as to such excess tonnage to be made the 1st day of April of each year.

"VI. Thompson-Starrett Company agrees to make payments for the material expedited not later than the fifteenth (15th) day of each calendar month for the tonnage of finished material shipped during the preceding month.

"In witness whereof, the parties hereto subscribe their respective names."

In performance of this contract the plaintiff expedited, as he was required to do under the contract, the deliveries of structural steel for all such contracts of Thompson-Starrett Company, except the Wanamaker contract hereinafter referred to, and he was paid for those services. It appears that during the time of this contract, namely, between April 1, 1908, and April 1, 1909, the Thompson-Starrett Company had a partially unperformed contract, made April 25, 1904, for the Wanamaker Building in the city of Philadelphia, under which contract the defendant company was to unload, store, haul, erect, and paint the structural steel in a building to be erected, etc., and that the plaintiff knew at the time he entered into the agreement that the defendant had this contract, and that it was unperformed as to the third section; that the contract did not include the furnishing of the steel for the building, and that the steel was being furnished by the American Bridge Company at Philadelphia. It also appears from the evidence that between April 1, 1908, and April 1, 1909, the defendant performed the work and erected the material provided for by the contract to the amount set out in the plaintiff's claim. It appears, also, from the contract sued upon and from the evidence in the case, that the services to be performed by the plaintiff in expediting deliveries of structural steel meant the supervising of the entering of the rolling lists and following them through the fabricating company's offices and the rolling mills, until the plain material has been delivered at the shops of the fabricating company, and supervision of the making of shop drawings, the fabrication and shipment of finished material, and, where necessary, the tracing of cars, expediting the movement of such cars to destination, and keeping in communication with

Thompson-Starrett Company through its chief engineer, reporting once weekly, or whenever requested, the condition of the work at the mills and in the shops as to plain and finished material. The necessity of expediting deliveries is seen from the following evidence:

"Q. Mr. Cadmus, why should the erector require the delivery of the steel or iron at certain times and in proper sequence? A. Well, the erector in charge of the construction of a building of that nature, a large construction, necessarily plans his work in advance, very much in advance. He has got to meet the conditions which enable him to not only erect his work cheaply, economically, keep his full force going, all his erection outfit in use, but at the same time he has got to work in such a way that the allied trades will not be delayed if they are following closely on the work he is erecting. The stone masons, brick men, concrete floor men, and so on, must necessarily be taken care of in an erection of that kind. He cannot erect a building piecemeal. He cannot do it, considering his own economies; nor is it permissible when he considers the rights of the other trades which necessarily work on that contract."

It appears from the evidence in the case that at the time the contract was made both plaintiff and defendant were fully conversant with the requirements of the Wanamaker contract; that the plaintiff had expedited the steel for the defendant company for the first section of that building as a salaried employé, which contract was the same contract under which the steel was being furnished for the third section, and for which plaintiff now claims to be paid, and that the steel for the first section was not supplied by the defendant company, but by the Pencoyd branch of the American Bridge Company at Philadelphia.

It appears, also, that the plaintiff offered to perform these services as to the deliveries of steel to the Wanamaker Building, and that his services were declined; the defendant claiming that they were not within the contract. It is admitted by the pleadings and proofs in the case that, if the deliveries of steel for the Wanamaker Building were within the contract, then plaintiff is entitled to recover, irrespective of the fact that he did not perform the services.

The question, then, presented to the court for its interpretation under this contract, was whether the plaintiff was entitled, under the whole contract, to be paid for structural steel erected by the defendant company, or whether the contract only included such steel as was *supplied and erected* by the defendant company. The court was of the opinion that the contract covered all steel erected by the defendant company, and was not limited to the steel supplied and erected, and therefore directed the jury to return their verdict for the defendant.

The parties, then, at the time of making the agreement, understanding that the work of expediting was necessary, whether the steel was supplied by the defendant company or not, entered into this contract. The undertaking of the plaintiff was the expediting of "the deliveries of structural steel for Thompson-Starrett Company," as appears by the first clause of the contract. There is no limitation here as to what steel was intended. Without more, the expression clearly means the delivery of all structural steel with which Thompson-Starrett Company had to do. I cannot regard it as meaning deliveries to defendant, as contended for by defendant's counsel, but rather as meaning

such steel as defendant would need to have delivered to it for the purpose of erecting the same. The second clause is the "securing of the delivery of the structural steel and cast iron necessary in Thompson-Starrett Company's business." There is no limitation here of the steel or iron, as suggested by the defendant, to be supplied by Thompson-Starrett Company, but it is the delivery of the structural steel and cast iron necessary in Thompson-Starrett Company's business, which it is conceded was, in the present case, at least, that of erecting the steel structure. The third clause provides, "And to give N. A. Vandevort all its tonnage." There is no limitation here restricting it to the tonnage of steel which it would both supply and erect; but it says "all its tonnage," clearly meaning, to my mind, all the tonnage necessary in its business.

I am clearly of opinion that this contract, properly interpreted, means that Thompson-Starrett Company undertook to pay the plaintiff on all steel which it erected during the life of the contract. The argument of the defendant is that the words "all its tonnage" mean only such of its tonnage as would be included in the steel supplied by it, because it is provided in the fourth clause that Thompson-Starrett Company hereby agrees that not over one-third of its total tonnage covered by this agreement will be placed outside of the Pittsburg territory above described, and, if all of this tonnage was intended, then Thompson-Starrett Company were undertaking to control tonnage over which they had absolutely no control, as in every case where steel was to be supplied by other firms and corporations. The answer to this seems to me to be that the fifth clause contemplates a placing of tonnage outside the Pittsburg territory, and provides that, if it is so placed in excess of the one-third of the entire tonnage, then he is to be paid an additional 15 cents per ton.

Certain evidence was offered under objection for the purpose of showing what the term "expedite" meant, as used in the contract, and the necessity for expediting. This testimony was admitted because of the ambiguous meaning of those terms, and not for the purpose of altering the contract, but for the purpose of understanding its terms. There is abundant authority for the doctrine that the court, in interpreting a contract containing ambiguous terms, or terms technically in use in the arts, may have the assistance of parol testimony for the purpose of casting light upon the ambiguous words. In the present case the court could not well interpret this contract without understanding the meaning of the expression "expedite" and the necessity of expediting. By the evidence offered it very clearly appeared to the court, which before that time was obscure, that expediting meant something more than the definition of that term found in the second clause of the agreement. It also made clear to the court that expediting was necessary where the contract was for erecting only, almost as much as when the contract was for supplying and erecting.

Viewing the whole contract, then, we are clearly of the opinion that the defendant undertook to pay the plaintiff at a certain rate upon whatever steel was used by the defendant in its business during the life of the contract; and, the steel used for the third section of the Wanamaker Building having been erected during the life of the con-

tract, the plaintiff was entitled to recover at the rate stipulated in the contract. Judgment must therefore be refused defendant, and judgment entered for the plaintiff on the verdict.

And now, November 2, 1910, the motion for judgment for defendant non obstante veredicto is overruled, and judgment directed to be entered for the plaintiff upon the verdict. Eo die counsel for defendant excepts to the above action of the court, and at his request exception noted and bill sealed.